Matthias, J.
The questions presented by the relator involve the operation by the Industrial Commission of the Private Fund and the Public Fund of the State Insurance Fund, as they were conducted under former statutes and as they are now conducted.
The first question presented may be stated as follows :
Is the relator entitled to a writ of mandamus requiring the respondents to set aside the transfer as of December 31, 1931, *17 of the sum of $1,447,411.43 from the Public Fund to the Private Fund; and to transfer this sum from the Private Fund back to the Public Fund and to compute, cumulative from December 31, 1931, to December 31, 1952, investment earnings on this sum and charge the Private Fund with such earnings by transferring this additional sum to the Public Fund?
The determination of this question requires a construction of the Workmen’s Compensation Act as it was in effect from 1913 to 1931, in which latter year substantial amendments were made, under which the fund now operates.
The Workmen’s Compensation Act first included public employees as of January 1, 1914. The amendment to that law in 1913 required the relator and each political subdivision to begin contributions based on its payroll for the preceding year at a fixed percentage; thereafter in each January the county auditor was required to issue his warrant to the State Insurance Fund for a like amount.
On July 20, 1914, Section 1465-65, General Code, was amended (105 Ohio Laws, 3, 4) to provide in part as follows:
“Provided, however, that should the Industrial Commission of Ohio on or before the first day of December in any year certify to the Auditor of State that sufficient money is in the State Insurance Fund to the credit of any county or counties to provide for the payment of compensation to the injured and to the dependents of killed employees of such county or counties and the several taxing districts therein for the ensuing year, the Auditor of State shall not prepare and file with the county auditors and the Treasurer of State said list or lists for such county or counties specified in such certificate; and it shall be the duty of the Industrial Commission of Ohio to make and file such certificate with the Auditor of State whenever in its judgment there is sufficient money in the State Insurance Fund to the credit of any county or counties to provide for the probable disbursements required to be made to the injured and to the dependents of killed employees of such county or counties and the several taxing districts therein for the ensuing year.”
During this period, Section 1465-69, General Code (effective January 1, 1914), provided for semiannual payments by *18 private employers into the State Insurance Fund of the amount of premium determined and fixed by the Industrial Commission for the employment or occupation of such employer, the amount of such premium to be determined by the classification, rules and rates made and published by the commission.
On December 12, 1928, this court decided the case of State, ex rel. Board of County Commrs. of Cuyahoga County, v. Casey et al., Industrial Commission, 119 Ohio St., 403, 164 N. E., 416. In that case, the county commissioners sought a writ of mandamus to require the Industrial Commission to issue or cause to be issued a certificate that there was sufficient money in the State Insurance Fund to the credit of Cuyahoga County for the payment of compensation to the injured and to the dependents of killed employees of the county for the fiscal year 1928, as provided in Section 1465-65, General Code. An assessment had been made by the Industrial Commission on Cuyahoga County for premiums to provide sufficient money to pay all the awards which had been made in past years and to pay in full the deferred payments which would be due after 1928 on account of injuries to employees of that county. In effect, the action of the Industrial Commission complained of by the relator was the application to the Public Fund of the principles of insurance then being used in relation to the Private Fund.
This court granted the writ and required the issuance of a certificate to the Auditor of State that no contribution was required for that year, holding that, under the provision of Section 1465-65, General Code, that such certificate should be made by the Industrial Commission, “whenever in its judgment there is sufficient money in the State Insurance Fund * * * to provide the probable disbursements required,” the commission was required to issue its certificate when money on deposit was sufficient to pay in full all probable disbursements of that particular county for the year, rather than a sum sufficient to pay compensation accrued for injuries to all the employees of all the counties and in the state as a whole. That case recognized that each public employer had a separate responsibility and was entitled to the certificate if sufficient *19 money was present in the fund to insure payment of its own claims.
Following that decision, Section 1465-65, General Code, was amended, effective July 29, 1931, in the form now substantially in effect.
From the time of the Casey case until such amendment, the Industrial Commission was required to revise its operations and to cease treatment of the Public Fund as an insurance fund. It thereafter treated such moneys as contributions to be disbursed on the individual account of each such public employer. At the time of such change in procedure, the Public Fund was recomputed, and interest which had been allowed to the Public Fund from 1914 to 1931 was separately computed and transferred to the private employers’ fund. The claimed illegality of this transfer, alleged to have been in the sum of $1,447,411.43, constitutes the gist of relator’s first claim.
The facts are in conflict on this subject, both as to the amount of money transferred and as to the method by which such interest was originally computed. That such a transfer of funds, regardless of the amount and method of computation, was made is admitted, so the legal question presented goes directly to whether the relator has established the illegality of this transfer. Relator has a further duty to show that it has a right to have such transfer revoked and set aside.
The basis of relator’s claim is that during that time it had funds invested with the Industrial Commission on which it received no investment earnings, and relator relies substantially upon that fact to show the illegality of the transfer. The attack on the action of the commission in transferring this money to the Private Fund is based primarily upon evidence adduced by answers of the respondents to the interrogatories, and from testimony of witnesses taken by deposition for use on behalf of the respondents. This evidence is definitely in conflict. Respondents have submitted a motion to the court to withdraw part of the stipulation of facts and to amend certain answers to the interrogatories, which motion is opposed by the relator, which has filed a motion for judgment based upon the disputed stipulation.
The following evidence discloses the situation out of which *20 the transfer of funds resulted. Mr. E. I. Evans, the actuary employed by the commission at the time the transfer of investment earnings from the Public Fund to the Private Fund was made, testified to the effect that he was chief actuary for the Industrial Commission from October 1, 1921, to August 1, 1944; that the Industrial Commission did not transfer the sum of $1,447,411.43 from the Public Fund; that the sum transferred was $929,103, which was the investment earnings to December 31, 1928; that no interest was credited to the fund during the years 1929 to 1934, inclusive; that the sum of $1,447,411.43 indicates the amount of interest that would have been allocated, had the commission not changed its policy following the decision of the Supreme Court that the two funds were not both insurance funds; that interest was allocated between the Public Fund and the Private Fund during the years prior tó and including 1928, on the basis of net premium earned, and not on a cash balance basis; that this followed a sound, recognized insurance principle that interest earned in insurance should not be allocated on a cash balance basis among individual parties of an insurance group, because, if one party who is insured suffers an adverse trend of losses, that individual account would have a large deficit; and that in the allocation of interest on the basis of balance, interest would be charged against that account and magnify the loss against it..
Evans testified further that, following the decision of the Casey case, supra, the Industrial Commission instructed the actuary to determine whether the Public Fund had, over a series of years, actually maintained, on any average, funds of sufficiently permanent nature to be available for investment in bonds; that at that time the Public Fund was in a precarious condition, for some counties had no balances but were overdrawn, and there could be no remedy until legislation could be passed and the contributions to the Public Fund increased to take care of existing deficiencies; and that it was determined that the equitable thing to do was to transfer the $929,103 that had already been credited erroneously, and to withhold any further allocation of interest until the Public Fund had an active bank account balance and a surplus available for investment.
*21 Evans testified further that the fund was audited by consulting actuaries on November 26, 1934, and the policy of the commission, in respect to the allocation of interest on the Public Fund, was reviewed, without criticism by such actuaries.
The testimony of Eichard Fondiller disclosed that he is the consulting actuary who audited the State Insurance Fund in 1934, 1938, 1947, and for a period of five years commencing with 1948; that from 1913 to 1929 the Public Fund was not credited with interest, for the amount of assets was greatly exceeded by claims in effect on which payments would have to be made for many years in the future, and the deficit was so overwhelming that no interest could be credited ;■ that the entry of the Industrial Commission (transferring the investment'earnings) meant that this actuarial audit reversed an error that had been previously made, which error consisted in crediting the Public Fund with interest to which it was not entitled; that, up to 1933, there was some interest earned on bonds but the interest lost on the assets which should have been in the fund to meet losses incurred greatly exceeded the interest earned and therefore no interest was credited to the fund; that the reserve to pay claims incurred is set up on a discounted basis, to allow for income on investment of that reserve; that failure to contribute the required amount for reserves, so that only a smaller part of the Public Fund was available for investment, reduced the interest that should have been earned on the reserve fund, to an amount less than was needed to meet claims in full when they became payable; and that this deficiency in interest earnings was supplied by the Private Fund.
The explanations tendered by deposition and by stipulation, even if conflicting, show a reasonable basis for the action of the Industrial Commission in the computation and distribution of the investment earnings, based upon the expert advice of actuaries. The correctness of the method urged by the relator as applicable, based upon the amount of bonds in the custody of the commission which were the property of the relator and other public employers, is not established by any evidence in the record. Under this state of facts, the decision of this court in the case of State, ex rel. Gerspacher, v. Goffinberry et al., Industrial Commission, 157 Ohio St., 32, 104 N. E. (2d), 1, is clearly applicable. The syllabus of that case is as follows:
*22 “1. Mandamus is an extraordinary legal remedy the essential purpose of which is to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. Before the writ may properly issue, the relator’s right thereto must be clear. The writ will not issue in a doubtful case or where the effect of its issuance would be to control the discretion of the one against whom' it would be directed.
“2. The members of the Industrial Commission of Ohio are state officers vested with broad discretion in the performance of their duties, and their actions in the field assigned them by statute are presumed to be in all respects valid and in the exercise of good faith and sound judgment.
“3. The issuance of a writ of mandamus rests largely within the sound discretion of the court, and where, in a class suit against the members of the Industrial Commission, a writ is demanded to require them, under the provisions of Section 1465-55, General Code, to refund and pay to all the contributors to the Public Fund of the Industrial Commission all monies collected in excess of the premium requirements, and, where, upon the record, a doubt arises as to relator’s right to the writ and the form it should take if issued and whether if it were issued in substantial conformity with the relator’s demands a desirable or beneficial public purpose would be served, the writ will be denied. ”
The second basis set forth by relator for the issuance of a peremptory writ of mandamus relates to the operation of the Public Fund at the present time. It seeks a writ requiring the respondents, as of January 1, 1953, to provide and thereafter maintain an individual account for the relator and each other public employer, crediting contributions of such employer, prorating investment earnings, refund credits, and any other income or credits, and debiting all disbursements for each year to or for the benefit of the employees of such employer; to establish the future contributions of relator and each other such public employer, as an amount sufficient, less any existing credits, to pay relator’s individual obligations for such year, such obligation not to exceed the estimated disbursements for such year ; and to distribute the surplus to rela/tor and all other such public employers.
*23 What .the relator seeks is to have this court construe the present statutes as being similar if not substantially identical to those which were in effect prior to 1931. This claim, it would seem, is amply answered by the following quotations from applicable statutes:
Section 1465-59, General Code (Section 4123.30, Revised Code): “The money contributed by the employers mentioned' in subdivision one of Section 1465-60 of the General Code shall constitute and be called the Public Fund and the money contributed by employers mentioned in subdivision two of Section' 1465-60 of the General Code shall constitute and be called the Private Fund and each such fund shall be collected, distributed and its solvency maintained without regard to or reliance upon the other. Whenever in this subchapter reference is made to the State Insurance Fund, such reference shall be construed to have been made to such two separate funds * * *. Nothing herein shall prevent the deposit or investment of all such moneys intermingled for such purpose but such funds shall be separate and distinct for all other purposes and the rights and duties created in this subchapter shall be construed to have been made with respect to two separate funds and so as to maintain and continue such funds separately except for deposit or investment. Disbursements shall not be made on account of injury, disease or death of employees of employers who' contribute to one of such funds unless the moneys to the credit of such fund are sufficient therefor and no such disbursements shall be made for moneys or credits paid or credited to the other fund.”
Section 1465-60, General Code (Section 4123.01, Revised Code): “The following shall constitute employers subject to the provisions of this act:
‘ ‘ 1. The state and each county, city, township, incorporated village and school district therein.
“2. Every person, firm and private corporation, including any public service corporation, that has in service three or more workmen or operatives regularly in the same business * *
Section 1465-62, General Code (Section 4123.38, Revised Code): “Every employer mentioned in subdivision one of Section 1465-60 shall contribute to the public insurance fund *24 the amount of money determined by the Industrial Commission, and the manner of determining such contributions and the classification of such employers shall be as provided in' Sections 1465-63 to 1465-67, inclusive.”
Section 1465-63, General Code (Section 4123.39, Revised Code): “The amount of money to be contributed by the state itself and each county and each taxing district within each county shall be determined by the Industrial Commission of Ohio. In fixing the amount of contribution to be made by the county, for such county and for the taxing districts therein, the Industrial Commission of Ohio shall classify counties and other taxing districts into such groups as will equitably determine the contributions in accordance with the relative degree of hazard, and shall also merit-rate such individual counties, taxing districts or groups of taxing districts in accordance with their individual accident experience so as ultimately to provide for each taxing subdivision contributing an amount sufficient to meet its individual obligations and to establish a solvent Public Fund by January 1, 1942, and thereafter to maintain such solvent fund.
U* * * >>
Section 1465-67, General Code (Section 4123.48, Revised Code): “In March of- each year the Treasurer of State shall certify to the Industrial Commission the amount of money that has been paid to him for credit to the public insurance fund as provided in the foregoing sections and the amount paid by the state itself and by each county and by the district activities and institutions mentioned in Section 1465-63, and at the same time shall certify to the commission the names of such as may have made default in the payments hereinbefore provided and the respective amounts for which they are in default. When any default is made in the payment of the sums hereinbefore required to be contributed to the public insurance fund, or when any official fails, neglects or refuses to perform any act or acts ■required to be performed by him with reference to the making of such payments, it shall be the duty of the Industrial Commission forthwith to institute the proper proceedings in court to compel such payment or payments to be made.
“The Industrial Commission shall keep, for the state, each *25 county, each taxing subdivision and each district activity and institution mentioned in Section 1465-63, an individual account showing the amount of money paid into the public insurance fund and the amount of losses incurred against such fund.”
Summarizing these sections, the money contributed by public employers goes into the Public Fund, and the Industrial Commission may invest such moneys intermingled with funds contributed by private employers, but each fund shall be separately maintained except for investment, and disbursements to the employees may only be made from the proper fund; the Industrial Commission may determine the amount which shall be contributed by each public employer, and, in fixing the amount of contribution, the Industrial Commission is required to “classify counties and other taxing districts into such groups as will equitably determine the contributions in accordance with the relative degree of hazard, and shall also merit-rate such individual counties, taxing districts or groups of taxing districts in accordance with their individual accident experience”; and the Industrial Commission is required to keep an individual account for each public employer, showing the amount of money paid into the public insurance fund and the amount of losses incurred against such fund.
All the characteristics of insurance are present in these statutes, and there is no requirement that separate records be kept of disbursements charged against the individual accounts; instead, losses incurred, which are the total payments to be made as compensation to injured employees immediately or thereafter, must be charged to the individual accounts as accrued. Merit-rating also is an element of insurance and is required under the present law. The record in this case shows further that, although complaint is made as to the amount of money which has been collected as the reserve against losses already incurred, the Industrial Commission in 1950 found such sums to be in excess of needs and distributed $808,439 of such surplus back to the public employers, of which sum the city of Toledo received a part.
Complaint is also made that the state of Ohio is not contributing its portion of such funds in the same ratio as other public employers, which claim the evidence supports; but there *26 is positive testimony to the effect that no compensation to injured state employees has been paid out of the contributions of the other public employers.
This court finds, therefore, that the relator has not established a clear right to a writ of mandamus, and in accord with the rule laid down in State ex rel. Gerspacher, v. Coffinberry et al., Industrial Commission, supra, the writ of mandamus must be denied.

Writ denied.

Hart, Zimmerman, Stewart, Bell and’ Taft, JJ., concur. Weygandt, C. J., dissents.